**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| ANGELA MCDERMOTT, individually and on behalf of all others similarly situated, <br><br>           Plaintiff, <br>    v. <br><br> EVOLUTE INC., <br><br>           Defendant. | Case No. <br><br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff Angela McDermott ("Plaintiff"), by her undersigned counsel, for this class action complaint against Defendant Evolute Inc. ("Defendant") alleges as follows:

## I.   INTRODUCTION

1.   Nature of Action: "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 649 (4th Cir. 2019).

2.   "[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

3.      Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making telemarketing calls, including sending text messages to numbers on the National Do Not Call Registry, including her own.

4.      Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

## II.    PARTIES

5.    Plaintiff is an individual who resides Delaware County, Ohio.

6.    Defendant is a corporation headquartered in this District.

## III.    JURISDICTION AND VENUE

7.    Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

8.    Venue: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a Defendant resides in this District.

## IV.    FACTS

### A.    The Enactment of the TCPA and its Regulations

9.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

10.    Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

11.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."

*Id.*

13.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.     Unsolicited Telemarketing to Plaintiff**

14.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

15.     Defendant is a marketing technology and lead generation company.

16.     Plaintiff is, and has been for some time, the regular and sole user of her cellular telephone number—(614) XXX-XXXX.

17.     Plaintiff's telephone number, (614) XXX-XXXX, is a non-commercial telephone number that is used for residential purposes.

18.     Plaintiff uses her cell phone number for personal use only as one would use a landline telephone number in a home.

19.     Plaintiff uses her cell phone primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.

20.     Plaintiff personally pays for her cell phone and is not reimbursed by a business.

21.     Plaintiff has never used her cell phone number in any business or marketing material.

22.     Plaintiff pays for her cell phone plan herself and is not reimbursed by a business.

4

23.     Plaintiff's number has been on the National Do Not Call Registry since October 31, 2007.

24.     Despite that, Plaintiff received at least one telemarketing text message and at least six telemarketing telephone calls from Defendant from short code in April and May 2026.

25.     On April 30, 2026, Plaintiff received a text message from Defendant from short code 87912 that stated the following:



26.     The text message invited Plaintiff to access a "property report" by clicking a hyperlink to Defendant's RateFeed platform, which Defendant uses as part of its consumer marketing and lead-generation efforts to engage prospective customers and facilitate commercial transactions

27.     The text message was meant for "Patty," a person other than, and unknown to, Plaintiff.

28.     Plaintiff sent Defendant a "stop" message which was acknowledged by Defendant.

29.     Despite being on the Do Not Call List and requesting the calls stop, Plaintiff continued to receive calls from Defendant.

30.     On April 30, 2026, Plaintiff received two calls from Defendant from caller ID (740) 351-8797.

31.     Plaintiff rejected the first call.

32.     Plaintiff answered the second call and told Defendant she was not "Patty" and to stop calling.

33.     On May 7, 2026, Plaintiff received another call from Defendant.

34.     Again, Defendant was looking for Patty and Plaintiff told Defendant they called the wrong person and to stop calling.

35.     On May 8, Plaintiff received another call from Defendant but rejected the call.

36.     On May 12, Plaintiff received two calls from Defendant.

37.     Plaintiff rejected the first call but answered the second call, and again, told Defendant she was not "Patty" and to stop calling.

38.    The text message and telephone calls were initiated for the purpose of advertising and promoting Defendant's business and the products and services of Defendant and/or its marketing clients.

39.    The text message directed Plaintiff to a "property report" through Defendant's RateFeed platform in an effort to generate consumer interest, induce engagement with Defendant's marketing platform, and solicit a future commercial transaction.

40.    The telephone calls that followed were part of the same marketing campaign as the text message and were intended to encourage the recipient to engage with Defendant regarding the advertised property report and related products or services.

41.    The communications were commercial solicitations intended to generate sales opportunities, qualify prospective customers, and promote Defendant's business and the goods or services offered through its marketing platform.

42.    Indeed, Defendant markets itself as a marketing technology and lead-generation company that uses SMS messaging, outbound telephone calls, consumer data, and targeted marketing campaigns to generate qualified consumer leads for mortgage lenders and home-service providers.

43.    The text message and subsequent telephone calls were part of a unified advertising and lead-generation campaign directed at prospective consumers and shared the common purpose of promoting commercial products and services.

44.    The calls qualify as telemarketing.

45.    Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

46.     A reasonable seller would investigate into the reasons why they would be sending hundreds of messages to numbers on the National Do Not Call Registry.

47.     Plaintiff's privacy has been violated by the above-described telemarketing calls/text messages.

48.     Plaintiff never provided her consent or requested these messages.

49.     In fact, the Plaintiff never did any business whatsoever with any of the Defendant.

50.     The aforementioned calls that were sent to the Plaintiff were unwanted.

51.     The messages were non-consensual encounters.

52.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the messages occupied their telephone storage space, rendering them unavailable for legitimate communication and other legitimate uses, including while driving, working, and performing other critical household tasks for which storage is required.

## V.     CLASS ACTION ALLEGATIONS

53.     Class Definition. Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the Class (the "Class") defined as follows:

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call or text message from or on behalf of Defendant, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

54.     Excluded from the Class are counsel, Defendant, any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

8

55.     The Class, as defined above, is identifiable through telephone records and telephone number databases.

56.     The potential members of the Class likely number at least in the hundreds because of the *en masse* nature of telemarketing calls.

57.     Individual joinder of these persons is impracticable.

58.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

59.     Plaintiff is a member of the Class and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the class members.

60.     Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, and the intrusion on their telephone that occupied it from receiving legitimate communications.

61.     This class action complaint seeks injunctive relief and money damages.

62.     There are numerous questions of law and fact common to Plaintiffs and members of the Class. These common questions of law and fact include, but are not limited to, the following:

        a.     Whether Defendant systematically made multiple telephone calls to members of the National Do Not Call Registry Class;

        b.     whether Defendant made calls to Plaintiff and members of the National Do Not Call Registry Class without first obtaining prior express written consent to make the calls; and

c.      whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

63.    Plaintiff's claims are typical of the claims of the Class, as they arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

64.    Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class, she will fairly and adequately protect the interests of the Class, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

65.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

66.    A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendant to comply with the TCPA. The interests of individual members of the Class in individually controlling the prosecution of separate claims against Defendant are small because the damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly more difficulties than are presented in many class claims. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

67.    Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis. Moreover, on information and belief, Plaintiff alleges that the telephone solicitation calls made by Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### Violations of 47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

68.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

69.    The foregoing acts and omissions of Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiffs and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

70.    Defendant's violations were negligent, willful, or knowing.

71.    As a result of Defendant's, and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are presumptively entitled to an award of between $500 and $1,500 in damages for each call made.

72.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to

11

telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      An order enjoining Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

E.      An award to Plaintiff and the Class of damages, as allowed by law; and

F.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

**VI.        DEMAND FOR JURY**

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this July 9, 2026.

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorney for Plaintiff and the Proposed Class*

12
